Filed Oct. 5, 1886.

---

No. 13,168.

## MOWRER v. THE STATE.

INJUNCTION.—*Contempt.*— *Jurisdiction of Special Judge.*—A special judge, appointed to hear and determine a particular case, has jurisdiction to punish a party for a violation of a restraining order previously granted by the regular judge.

SAME.—*Interference with Status of Personal Property.*— *When no Contempt.*— Where, during the pendency of an action respecting the ownership and custody of a piano, "the defendant and all other persons" are enjoined from removing it from the defendant's house, where it is situate, but the defendant, before the action is determined, and without reporting his intention to the court, rents his house and moves to another State, leaving the piano in the house, but making no arrangement for its storage, the plaintiff may remove the instrument to his own house for safe-keeping without being guilty of contempt.

From the Henry Circuit Court.

*J. Brown, W. A. Brown, J. B. Julian* and *J. F. Julian,* for appellant.

NIBLACK, J.—On the 10th day of April, 1886, John M. Mowrer filed his complaint in the court below against Asa Hatch, averring that he and the said Hatch were jointly the owners of a piano-forte of the value of $400, each owning a one-half interest therein; that said piano was then, and for

four years then last past had been, in the exclusive possession of him, the said Hatch; that the said Hatch would not consent that he, the plaintiff, should at any time have the possession or use of such piano, or agree to sell or rent the same; that the rental value of the piano was and had been $60 per year; that said piano was detained at the residence of Hatch at Newcastle, in Henry county. The plaintiff demanded that a receiver be appointed to take possession of the piano and to make sale thereof; also an accounting between the parties.

On the 17th day of April, 1886, the parties appeared before the judge of the Henry Circuit Court at chambers, in Newcastle, when an order in the cause was entered in the following words: "It is ordered by the court that the property in controversy in the above cause be and remain where it now is until the further order of the court, and that the defendant, and all other persons, be restrained and enjoined from removing the same from the place where it now is, or interfering with it, until the determination of said action, or the further order of the court."

At the ensuing term of the circuit court above named, the regular judge declined to preside in the cause, and appointed Thomas B. Redding, Esq., a practicing attorney of that court, special judge to hear and determine the controversy between the parties. Redding qualified and assumed jurisdiction of the cause.

At a later day in the term, William O. Barnard and Eugene H. Bundy, as attorneys for Hatch, filed their affidavit in the court below, charging that Mowrer, the plaintiff, had, on the 20th day of May, 1886, caused the property in controversy to be removed from the house and residence of the defendant Hatch, where it was ordered to be left and to remain, to the house and residence of him, the plaintiff, and that the plaintiff then had the possession of, and detained such property without right and in violation of the order previously made in the cause by the regular judge, as herein above stated.

Redding, acting as special judge for the occasion, entered a rule against the plaintiff requiring him to return the piano to the place from which it had been removed, or to show cause why he should not be attached for contempt in disregarding the order of the court.

The plaintiff, appearing in answer to the rule, moved to set aside the order granting it, and to quash the proceedings against him as for a contempt, upon the ground that such proceedings were separate and distinct from the original action, and that consequently the appointment of Redding as special judge in such original action did not confer upon him jurisdiction over the alleged offence charged by the affidavit of Barnard and Bundy, but the plaintiff's motion was overruled. The plaintiff then answered, under oath, that at the time the restraining order herein above set out was made, the piano was in the possession, and in the house, of the defendant Hatch, at Newcastle; that soon after the entry of such restraining order, Hatch vacated his house at Newcastle, leaving the building unoccupied and the piano remaining within it, and removed to, and took up his residence at Springfield, in the State of Ohio; that the piano was a valuable instrument, and his, the plaintiff's, interest therein needed proper protection; that Hatch had rented his house to one Harden for one year, without reserving any right of storage for the piano; that the house remained unoccupied for some time, after which Harden moved his family into it, and found the piano standing in one of the rooms; that Harden was unwilling to give the piano house-room unless he could have the full use of it; that as Harden found no one who felt authorized to grant him the use of it, he informed the plaintiff that he wanted the piano taken away from the house; that the plaintiff thereupon took charge of the piano and removed it a distance of two or three squares to his own house for safe-keeping; that Hatch had filed his answer in the original action, disclaiming all interest in the piano, except

as the treasurer and custodian in behalf of the Philharmonic Society of Newcastle.

The court, acting through Redding as special judge, held Mowrer's answer to be insufficient to excuse him for disobedience of the authority of the court in removing the piano from the place at which it had been left by Hatch, and assessed a fine against him in the sum of $25 as for a contempt for such disobedience. It was also made a part of the judgment that the sheriff should take the piano from the possession of Mowrer and return it to the house and place from which it had been taken by him.

Mowrer reserved questions upon the summary proceedings thus taken against him, and has appealed to this court from the judgment so rendered against him as the result of such proceedings. As to appeals in such cases, see the case of Worland v. State, 82 Ind. 49.

The power of a court, possessing equity jurisdiction, to punish, as a contempt, the violation of an injunction or restraining order, lawfully granted by the court or a judge thereof at chambers or in vacation, is a power which has long been exercised and never seriously questioned. Rapalje Contempts, section 20. This power to punish for the violation of an injunction is incident to the power to grant an injunction, and may be exercised by any judge having jurisdiction of the cause in which an injunction was ordered. Redding, therefore, as special judge in the principal cause, had jurisdiction to hear and to determine the charge against Mowrer for his alleged violation of the restraining order herein above set forth. Kerr Injunc. 637; Stimpson v. Putnam, 41 Vt. 238.

To authorize the infliction of punishment for a violation of an order of injunction, the order must clearly embrace and prohibit the act complained of, and the act must have been in contravention of the spirit, as well as the letter, of the order. Rapalje, supra, section 43. An order of injunction prohibiting any disturbance of, or interference with, the status

of property, pending litigation concerning it, does not prevent any party, having an interest in such property, from doing whatever is reasonably necessary for its preservation. *Behrens* v. *McKenzie*, 23 Iowa, 333. So, when subsequent events have so changed the general or immediate situation of property, for the maintenance of the *status* of which an order of injunction has been granted, as to render a literal compliance with the order impracticable, a reasonable conformity with the spirit of such order is all that can be insisted upon. *Robertson* v. *Bingley*, 1 McCord Ch. 193.

Strictly speaking, the writ of injunction does not restrain the plaintiff. By its terms, this writ ordinarily enjoins only the defendant. It does not follow, however, that the plaintiff can, with impunity, do acts which, at his instance, the defendant has been restrained from doing, and where the purpose of an injunction is to preserve the existing *status* of property in litigation until a final adjudication can be had, it is a gross abuse of the process of the court for the plaintiff to disregard his own injunction, and to disturb the existing *status* of such property. The court granting the injunction has doubtless ample power to redress such an abuse, by ordering the plaintiff to restore the *status* which he has disturbed, and requiring him to abstain from further interfering improperly with such property; also, by dissolving the injunction upon the ground that the plaintiff has forfeited his claim to the equitable relief which the injunction afforded him, in the event that his misconduct has been so gross as to justify such a proceeding. *Vanzandt* v. *Argentine Mining Co.*, 2 McCrary U. S. 642.

There was nothing in the order in this case requiring the then existing *status* of the piano to be preserved, which restrained, or assumed to restrain, Hatch from emigrating from the State, but it was a violation of the spirit of the order for him to leave the State, and abandon all control over the piano, without either reporting his intention in that respect to the court and asking to be relieved from all further responsibility

on account of his possession of the piano, or making suitable arrangements for its storage and safe-keeping at the house at which he left it.    Under the circumstances, Harden was not required to assume any care of, or control over, the piano, nor even to accord house-room to it while he occupied Hatch's house.    Consequently, the condition in which Hatch left the piano amounted, in a legal point of view, to a change of its previously existing *status*, and to a waiver of his right to insist upon a literal observance of the terms of the restraining order by others.    In view of this changed *status* of the piano, Mowrer was guilty of no wrong in taking possession and control of the piano for safe-keeping pending the litigation concerning it.    For a similar reason, no cause was shown which properly authorized the entry of the order requiring the piano to be returned to Hatch's house in Newcastle, and presumably to be placed under Harden's control without first appointing him a receiver to take charge of the property.

The judgment herein appealed from is reversed, and the cause remanded, with instructions to the court below to discharge the rule entered against Mowrer for his alleged contempt of the authority of the court.

Filed Oct. 6, 1886.